**Jane Ann LOWE**

v.

**William Mike PADGETT and Knox County, Tennessee.**

Civ. No. 3–87–145.

United States District Court,
E.D. Tennessee, N.D.

March 6, 1989.

W.P. Boone Dougherty, Knoxville, Tenn., for plaintiff.

Dale Workman, County Law Director, Richard Beeler and John Duffy, Warren L. Gooch and Wayne R. Kramer, Knoxville, for defendants.

## ORDER

HULL, Chief Judge.

This is a civil rights action, 42 U.S.C. § 1983, in which plaintiff Jane Ann Lowe claims that on August 31, 1986, she was discharged from her position as Chief Clerk in the Knox County Clerk's Office for purely political reasons and that this discharge also deprived her of a property right to continued employment without due process of law. The case is now before the Court on the defendants' motion for summary judgment. [Doc. 19].

There are very few facts in dispute. Plaintiff Lowe first started working for Knox County in October of 1970. She came to work in the County Clerk's Office as Executive Secretary to then County Clerk Robert Easley in 1980. Before his death, Mr. Easley appointed her Chief Clerk. She fulfilled his duties as Clerk while he was hospitalized from a terminal illness and served as Acting County Clerk after his death until a new Clerk could be appointed. She actively sought the Clerk's appointment but the County Commission selected Tommy Lowe. Mr. Lowe and the plaintiff (then Jane Turner) were not married at that time. He retained her as his Chief Clerk and married her while he was in office. In 1984, Mr. Lowe ran for the Clerk's position and was elected. In 1986, he ran again but was defeated by William Padgett.

As part of his campaign for Clerk, Mr. Padgett promised to streamline the operation of the Clerk's Office; eliminate two supervisory positions (Chief Deputy Clerk and Tax Enforcement Officer); take on more of the direct supervision himself; and generally save the taxpayers' money. One issue of the campaign was the fact that Mr. and Mrs. Lowe held the two top positions in the Clerk's Office and together took home

over $93,000 in salaries and other benefits. In a public forum, when directly challenged on this point by *Knoxville News–Sentinel* staff writer Rebecca Ferrar, Mr. Padgett stated unequivocally that if he were elected he would fire Mrs. Lowe.

Mr. Padgett was elected, and he did just that. He also fulfilled other campaign promises by eliminating three full-time positions and five part-time positions. Of course, Mrs. Lowe's position was one of those eliminated.

There is no evidence of a wholesale replacement of Mr. Lowe's staff by members of Mr. Padgett's party, however. All those employed by Mr. Lowe were invited to reapply for their positions. No non-supervisory full-time employees who asked to stay on were eliminated. Three of the four departmental supervisors who had served under Tommy Lowe were retained. The majority of those rehired had actively campaigned for Mr. Lowe.

Mr. Padgett created (or re-established) the position of Executive Secretary at a salary considerably lower than the one Mrs. Lowe had held as Chief Deputy Clerk. Mrs. Lowe applied for this position but was never interviewed. The person eventually selected was chosen purely on the basis of her secretarial skills—she had had nothing to do with Mr. Lowe's campaign.

Still, there is no question that Mrs. Lowe could have been considered for the position of Executive Secretary. She had held this position under Clerk Easley and, of course, had many years of experience in the Clerk's Office. There is nothing in the record to suggest that she would not have been fully capable of holding it.

■ While it is never explicitly stated, it is obvious that Mr. Padgett did not want to have the wife of his political opponent working at his right hand. In that sense, his decision not to retain Mrs. Lowe in the Clerk's Office was certainly "political." The real question is, did this decision violate the First Amendment to the Constitution.

The Court thinks it did not. The case law on the question of political patronage dismissals has always recognized the right of elected officials to replace underlings who hold policy making or confidential positions. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); and their progeny. While the affidavits of Tommy and Jane Lowe both deny that Mrs. Lowe held a policy-making or confidential position in Mr. Lowe's office, the evidence is clear that many of those who worked in the Clerk's Office thought otherwise. In addition, Mr. Padgett himself thought otherwise at the time he made his decision. However, the Court does not need to decide whether or not the position was a highly confidential one or involved any important policy making. Mr. Padgett eliminated the position and he had a right to do so.

The Court does not believe that it would be seriously disputed that the position of Executive Secretary is a confidential one. No interpretation of the First Amendment case law would require a new County Clerk to hire his opponent's wife to work as his personal secretary.

■ The Court does not believe that a First Amendment violation has occurred. However, if this finding is incorrect, Mr. Padgett would certainly have been acting reasonably in believing he could hire someone else to fill that position without committing a constitutional tort. His entitlement to good faith immunity on this issue is strengthened by the fact that he sought the counsel of Knox County Law Director Dale Workman before issuing any termination notices.

For this reason, neither defendant Padgett nor Knox County can be found liable for any First Amendment violation.

■ Plaintiff Lowe's other claim is that the dismissal deprived her of a property right to continued employment. In order to prevail on this claim, she must prove that she had a protected property interest in continued employment and that state law did not afford her adequate post-deprivation remedies. *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983). While there is a seri-

ous factual dispute as to whether or not Mrs. Lowe's position was covered by the Knox County Personnel Plan, this dispute is not material to the due process question. There is absolutely nothing in the record to support a finding that Mrs. Lowe lacked an adequate remedy at state law. In fact, there is every indication that she had several alternative avenues of appeal which she never invoked.

Accordingly, the Court finds the defendants' motion for summary judgment well taken. It is hereby GRANTED and this action is DISMISSED.