Denise CARVER, Plaintiff–Appellant,

v.

Mildred DENNIS, individually and in her official capacity as county court clerk of Jackson County, Tennessee, Defendant–Appellee.

No. 95–5873.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 2, 1996.

Decided Jan. 17, 1997.

mid-stream, especially with regard to a provision that drew little or no separate attention.

Richard M. Brooks (argued and briefed), Carthage, TN, for plaintiff–appellant.

Joseph F. Edwards, Manuel F. Edwards (argued and briefed), O'Mara, Johnson, Edwards & Edwards, Cookeville, TN, for defendant–appellee.

Before: KEITH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

The plaintiff appeals the order of the United States District Court for the Middle District of Tennessee granting summary judgment for the defendant. *Carver v. Dennis,* 886 F.Supp. 636, 640 (M.D.Tenn.1995). For reasons different from those given by the district court, we AFFIRM.

## I.

Plaintiff Denise Carver sued Mildred Dennis individually and in her official capacity as Jackson County, Tennessee, clerk,[1] under 42 U.S.C. §§ 1983 and 1985(3). Carver worked for Dennis as deputy clerk until announcing on December 8, 1993, that she was running for county clerk—against Dennis—in the next election. Dennis laid her off on December 9, 1993, and replaced her one month later. Dennis conceded that had Carver not entered the race, she would not have dismissed her. *See id.* at 637. Carver, an employee at will, *id.* at 637 & n. 1 (quoting TENN.CODE ANN. § 8–20–109 (Michie 1993)

("deputies . . . shall be removable by the officer for whom they are acting, at will")), claims this violated § 1983 and the First Amendment.

The facts were not in dispute. Dennis moved for summary judgment based on qualified immunity and also on the merits. *Id.* at 637. The district court did not address the issue of qualified immunity but granted summary judgment on the merits. *Id.* at 640.

Assuming that in announcing her candidacy for her boss's job, Carver was engaging in political activity and therefore was entitled to First Amendment protection,[2] the district court found that Carver was not fired because she held political views different from those of Dennis. Instead, she was fired because of her political activity, which the district court analyzed using a First Amendment balancing test under *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). 886 F.Supp. at 638–40. The district court stated that in this action, as in *Donlin v. Watkins,* 814 F.2d 273 (6th Cir.1987),[3] it was appropriate to consider the work environment created by having two candidates for the same post working in the same office. Citing *Donlin,* the court concluded that the employer's interest overrode the plaintiff's presumed First Amendment rights. 886

---

1. The style of this action refers to the "county court clerk." The complaint refers to the "county clerk." This does not affect our decision.

2. Contrary to Carver's contention, this was an assumption, not a holding. See 886 F.Supp. at 638–39.

3. The district court noted that in *Donlin* we applied the *Pickering* balancing test. 886 F.Supp. at 639.

 In *Donlin,* a county employee was fired after campaigning for someone who ran for county prosecutor but lost. *See* 814 F.2d at 274–75. The district court granted summary judgment for the defendant. We acknowledged that the district court applied *Pickering,* 814 F.2d at 275–76, *assumed this was proper, see id.,* and affirmed summary judgment because the plaintiff did not contend on appeal that there remained for trial

issues of fact that could render erroneous the district court's holding that "the potential disruption of the prosecutor's office and the interests of the employer in avoiding such problems outweighed plaintiff's [F]irst [A]mendment rights." *Id.* at 277. We further stated:

 Neither has plaintiff argued that a close working relationship is not essential to the performance of his duties, nor that plaintiff and defendant's working relationship would not have caused problems among the staff. In short, plaintiff has again made no showing that there were genuinely disputed fact issues precluding the entry of summary judgment. In the absence of showing that the outcome would be any different, we decline to reverse the entry of summary judgment.

*Id.*

 This does not require us to apply *Pickering* here.

F.Supp. at 640.[4]

## II.

We review a grant of summary judgment de novo, *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (citations omitted), and may affirm the judgment of the court below on other grounds, *see J.E. Riley Inv. Co. v. Commissioner of Internal Revenue*, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940) (citing *Helvering v. Gowran*, 302 U.S. 238, 245, 246, 58 S.Ct. 154, 157–58, 158, 82 L.Ed. 224, (1937), *cited in Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985)); *Collier v. Stanbrough*, 47 U.S. (6 How.) 14, 21, 12 L.Ed. 324 (1848); *but see City of Kingsport, Tenn. v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir.1974), if we proceed carefully so the party opposing summary judgment is not denied an opportunity to respond. *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981) (citations omitted).

### A.

 The Supreme Court has long held that the Fourteenth Amendment makes the First Amendment applicable to the states. *E.g., Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 630, 69 L.Ed. 1138 (1925) (freedom of speech and freedom of the press). In reviewing First Amendment case law last Term, the Court stated:

The government needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy and responsiveness of service to the public, and to prevent the appearance of corruption. And, absent contractual, statutory or constitutional restriction, the government is entitled to terminate them for no reason at all.

*Board of County Comm'rs v. Umbehr*, — U.S. —, —, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996). The Court's "modern 'unconstitutional conditions' doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected … freedom of speech' even if he has no entitlement to that benefit...." *Id.* (emphasis added) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972), and collecting authorities).

[T]he First Amendment does not create property or tenure rights, and does not guarantee absolute freedom of speech. The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern. See *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) (speech on merely private employment matters is unprotected). *To prevail, an employee must prove that the conduct at issue was constitutionally protected*, and that it was a substantial or motivating factor in the termination.

*Id.* (emphasis altered).

 Thus, our first inquiry is whether the Constitution protects the plaintiff's conduct. *See id.; see also id.* at —, 116 S.Ct. at 2348 (*Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), "assures the government's ability to terminate contracts so long as it does not do so in retaliation for protected First Amendment activity."); *O'Hare Truck Serv., Inc. v. City of Northlake*, — U.S. —, —, 116 S.Ct. 2353, 2356, 135 L.Ed.2d 874 (1996) (referring to "constitutionally protected speech or associations") (quoting *Perry*, 408 U.S. at 597, 92 S.Ct. at 2697–98; *see generally McCloud v. Testa*, 97 F.3d 1536, 1542 n. 9 (6th Cir.1996)). Stated narrowly, the issue before us is whether Carver, a deputy county clerk who was an at-will employee in a two-person office—the other person being the county clerk herself—had a First Amendment right to run against the incumbent clerk in the next election and still retain her job.

### B.

In the district court, the plaintiff cited *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673,

---

4. Another district court in this circuit has applied *Pickering* in similar circumstances. *See Simmons v. Stanton*, 502 F.Supp. 932, 934–37 (W.D.Mich.1980).

49 L.Ed.2d 547 (1976) (plurality opinion), *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Perry* to assert that retention of a government job cannot be based on an employee's political beliefs. *See generally O'Hare Truck, ——* U.S. at ——, 116 S.Ct. at 2357; *Conklin v. Lovely,* 834 F.2d 543, 544–47 (6th Cir.1987). But the plaintiff's complaint does not allege, nor does the record contain any evidence whatsoever, that she lost her position because of her political beliefs. The complaint alleges and the record demonstrates only that Dennis fired her for her rival *candidacy,* which is a different matter. The constitutionality of dismissing Carver, a government employee, for her political beliefs, her expression of those beliefs, or her political affiliations is not before us.

The *Elrod/Branti* line of opinions circumscribes the conditioning of employment on, or the termination of employment because of, an individual's political beliefs and political affiliations. The *Elrod* plurality explained:

Patronage ... to the extent it compels or restrains belief and association is inimical to the process which undergirds our system of government and is "at war with the deeper traditions of democracy embodied in the First Amendment." As such, the practice unavoidably confronts decisions by this Court either invalidating or recognizing as invalid government action that inhibits belief and association through the con-

ditioning of public employment on political faith.

427 U.S. at 357, 96 S.Ct. at 2682 (internal citation omitted). "In summary," the *Elrod* plurality concluded, "patronage dismissals severely restrict political belief and association." *Id.* at 372, 96 S.Ct. at 2689.[5]

The undisputed facts in this case, however, demonstrate that Carver's discharge implicates none of the concerns raised by *Elrod* or *Branti.* The parties here do not dispute the fact that Carver was discharged solely because she announced her candidacy against Dennis for Dennis's office. This was not a patronage dismissal. It was not a dismissal because of political beliefs or affiliations. It was not a dismissal based on politics at all, except to the extent that running for public office is a political exercise in its broad sense.

## C.

While the Supreme Court has held that the fundamental rights include freedom of speech, *e.g., Grosjean v. American Press Co.,* 297 U.S. 233, 243, 56 S.Ct. 444, 446, 80 L.Ed. 660 (1936) (citations omitted), and freedom of association, *e.g., Gibson v. Florida Legislative Investigation Comm.,* 372 U.S. 539, 544, 83 S.Ct. 889, 892–93, 9 L.Ed.2d 929 (1963) (citations omitted), both of which the First Amendment protects, *see* U.S. CONST. amend. I, the Court has never recognized a funda-

5. The three-justice plurality opinion and two-justice concurrence in *Elrod* together held only that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).

Four years later, *Branti* rejected *Elrod*'s policymaker/confidential rule, *see* 445 U.S. at 518, 100 S.Ct. at 1294, holding that

the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Id.* at 518, 100 S.Ct. at 1294–95. *Branti* also rejected a suggestion that *Elrod* applies only to "dismissals resulting from an employee's failure to capitulate to political coercion[,]" *i.e.,* only when "an employee is ... asked to change his

political affiliation or to contribute to or work for the party's candidates...." *Id.* at 516, 100 S.Ct. at 1293. It suffices for plaintiffs "to prove that they were discharged solely for the reason that they were not affiliated with or sponsored by" a political party. *Id.* at 517, 100 S.Ct. at 1294 (internal quotation marks omitted). Party "affiliation may be an acceptable requirement for some types of government employment[, such as when] an employee's private political beliefs would interfere with the discharge of his public duties...." *Id.*

*Rutan v. Republican Party of Ill.,* 497 U.S. 62, 79, 110 S.Ct. 2729, 2739–40, 111 L.Ed.2d 52 (1990), then held that "the rule of *Elrod* and *Branti* extends to promotion, transfer, recall, and hiring decisions based on party affiliation and support...."

Last Term, the Court extended the protections of *Elrod* and *Branti* to cover governments' independent contractors. *See O'Hare Truck, ——* U.S. at ——, 116 S.Ct. at 2358–59; *Umbehr, ——* U.S. at ——, 116 S.Ct. at 2352.

mental right to express one's political views through candidacy. *See Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972), *quoted in Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (plurality opinion) (stating that, "[f]ar from recognizing candidacy as a 'fundamental right,'" the Court has held that the existence of barriers to candidates' access to a state primary ballot does not compel close scrutiny); *Newcomb v. Brennan,* 558 F.2d 825, 828 (7th Cir.1977) (Three Supreme Court decisions [6] "indicate that plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection. Moreover, since plaintiff has not alleged that by running for Congress he was advancing the political ideas of a particular set of voters, he cannot bring his action under the rubric of freedom of association which the Supreme Court has embraced." (internal citation omitted)) *cited in Bart v.*

*Telford,* 677 F.2d 622, 624 (7th Cir.1982) ("The First Amendment does not in terms confer a right to run for public office, and this court has held that it does not do so by implication either."); *see also Wilbur v. Mahan,* 3 F.3d 214, 219 (7th Cir.1993) (Easterbrook, J., concurring) (citing *Clements,* 457 U.S. at 971–73, 102 S.Ct. at 2847–49 (plurality opinion); *Broadrick v. Oklahoma,* 413 U.S. 601, 616–17, 93 S.Ct. 2908, 2918–19, 37 L.Ed.2d 830 (1973); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973); *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947)).[7]

## D.

To dispose of this action, the district court, 886 F.Supp. at 639–40, used the balancing

---

**6.** The three are *Buckley v. Valeo,* 424 U.S. 1, 39–59, 96 S.Ct. 612, 644–54, 46 L.Ed.2d 659 (1976), *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), and *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

**7.** Neither *Clements, Broadrick, Letter Carriers* nor *Mitchell* dealt with the claim of First Amendment protection that we deal with here.

The *Clements* plurality considered two sections of the Texas Constitution, the first of which rendered state and federal officials ineligible for the state legislature, and the second of which provided for the automatic resignation of certain state and county officials who announced their candidacies for state or federal office. 457 U.S. at 960, 102 S.Ct. at 2842 (citations omitted). After disposing of an equal-protection challenge, *id.* at 964–71, 102 S.Ct. at 2844–48, the Court turned to the First Amendment and summarily held that the equal-protection analysis also disposed of the First Amendment claim, because the burdens on the prospective candidates' interests in being candidates were insignificant, and also because the state's interests were sufficient to warrant *de minimis* interference with the plaintiffs' interests in candidacy. The Court further held that the restrictions imposed by the Texas Constitution on the political activity of elected officials were far more limited than the restrictions that the Court had upheld with regard to civil servants. *See id.* at 971–72, 102 S.Ct. at 2847–48.

*Broadrick* considered an Oklahoma statute which, *inter alia,* forbade civil servants from running for paid public office. 413 U.S. at 602–03 & n. 1, 93 S.Ct. at 2911 & n. 1. The plaintiffs claimed that two paragraphs of the statute, including the one forbidding civil servants from running for paid public office, were unconstitu-

tionally vague, were too broad, and violated the Equal Protection Clause. *Id.* at 607 & n. 5, 93 S.Ct. at 2913 & n. 5. Noting that the statute was not censorial, *i.e.,* it was not directed at particular groups or viewpoints, *id.* at 616, 93 S.Ct. at 2918 (citing *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)), the Court found that the statute regulated political activity neutrally and evenhandedly, recalled that such statutes are subject to less exacting overbreadth scrutiny (a point that need not concern us here, since we have no overbreadth claim before us), and held that "there is no question" that the prohibition on running for paid public office was valid. *Id.* (citing *Letter Carriers* ); *see also id.* at 607–08, 87 S.Ct. at 685–687.

*Letter Carriers,* decided the same day as *Broadrick,* unhesitatingly reaffirmed *Mitchell* and stated that a statute prohibiting federal employees from being partisan candidates for political office would be valid. *See* 413 U.S. at 556, 564–65, 93 S.Ct. at 2886, 2889–90. The Court agreed "with the basic holding of *Mitchell* that plainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited." *Id.* at 567, 93 S.Ct. at 2891; *see generally* RONALD D. ROTUNDA & JOHN E. NOWAK, 4 TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 20.52, 379–84 (2d ed. 1992).

*Letter Carriers* noted that in 1940, Congress extended the Hatch Act to "officers and employees of state and local agencies 'whose principal employment is in connection with any activity which is financed in whole or in part by any loans or grants made by the United States....'" 413 U.S. at 561, 93 S.Ct. at 2888.

test from *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968), which, along with *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972), holds that public benefits, even those to which an individual has no entitlement, cannot be denied the individual on a basis that infringes the individual's constitutionally protected interests, particularly the right to free speech. Thus, the *Pickering* Court held that the employee's "exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." 391 U.S. at 574, 88 S.Ct. at 1738; *see also Perry*, 408 U.S. at 597, 92 S.Ct. at 2697–98.

However, Carver's dismissal was not a denial of a government benefit—public employment—on a basis that infringed her "constitutionally protected interests...." *Perry*, 408 U.S. at 597, 92 S.Ct. at 2697. This record contains no evidence that the basis for Carver's discharge was her exercise of her right to speak out on matters of public concern. Indeed, there is no evidence that Carver either held or voiced any opinions on anything. The basis for her discharge was solely the fact that she was trying to take the job of her employer. *Pickering* and *Perry* do not apply.

### E.

Considerable case law addresses the extent to which the First Amendment protects the candidacy of an employee who runs for the elective office of his boss. *See, e.g., Wallace v. Benware*, 67 F.3d 655, 661 (7th Cir.1995) (holding that while the elected county sheriff could, without violating the First Amendment, discharge or demote the deputy who ran against him, the sheriff could not retain the deputy but engage in retaliatory harassment against him because of that

candidacy); *Wilbur*, 3 F.3d at 217–19 (holding that the sheriff could, without violating the First Amendment, restrict free speech rights of deputy who announced candidacy against sheriff); *Click v. Copeland*, 970 F.2d 106, 111–12 (5th Cir.1992) (holding that deputy sheriffs who ran against the sheriff were engaged in conduct that addressed matters of public concern and therefore some First Amendment protection attached). The parties have called our attention to no case, however, and we have found none, in which the employee who announced his candidacy against his employer was the sole employee of that employer, and was discharged solely for the fact of his announced candidacy.[8]

This case is similar to *Bart*, in which a city employee sought to run for mayor, but the incumbent mayor, who was not seeking reelection, required that she take a leave of absence to run. The employee claimed that this violated her First Amendment rights. The Seventh Circuit disagreed, noting that she had not alleged that the mayor singled her out for her political views or that he would have allowed another city employee to run while continuing on the job; therefore, the restriction was neutral *vis-à-vis* the First Amendment. 677 F.2d at 624. Similarly, in the case before us, Carver does not allege that Dennis singled her out for her political beliefs or her political affiliations, and indeed, the parties have stipulated that the election was non-partisan and that political affiliation was irrelevant. Neither does she allege that Dennis would have allowed another employee, had there been one in the office, to run while continuing on the job. Rather, when stripped of its *Elrod/Branti* cloak, Carver's claim is that Dennis fired her because she was trying to take Dennis's job. As in *Bart*, Carver's termination is neutral in terms of the First Amendment.

8. We note with approval that in *Lowe v. Padgett*, 740 F.Supp. 481 (E.D.Tenn.1989), aff'd, 897 F.2d 529 (6th Cir.1990), another case in which the claim of denial of public employment in violation of the First Amendment was not based on patronage or politics or the exercise of free speech, the district court addressed allegations that the defendant, a new county clerk, violated the First Amendment rights of the plaintiff, the former chief clerk in the county clerk's office. The

plaintiff was the wife of the former county clerk, whom the defendant had defeated in the previous election. Upon taking office, the defendant fired the plaintiff. She then applied to be the defendant's secretary but was never interviewed. 740 F.Supp. at 482–83. In granting summary judgment for the defendant, the district court held that no interpretation of the First Amendment required the county clerk to hire his opponent's wife to be his personal secretary. *Id.* at 483.

*Bart* is clearly distinct from *Newcomb*, an earlier Seventh Circuit case, in which a city attorney fired a deputy city attorney who announced his candidacy for Congress. 558 F.2d at 827. Although the defendant eventually prevailed, *id.* at 830–31, the Seventh Circuit held that the "plaintiff's interest in running for Congress and thereby expressing his political views without interference from state officials who wished to discourage the expression of those views lies at the core of the values protected by the First Amendment." *Id.* at 829. The First Amendment applied, because the plaintiff's complaint implicated interests broader than a right to candidacy; it alleged that the defendant would have treated differently someone else who sought the same office, and that it was only the plaintiff's candidacy which the defendant wished to discourage. *See id.* at 828. And *Newcomb* is clearly inapposite to the case before us, because there is no allegation and no record support for the proposition that Dennis would have treated differently someone else who sought to take Dennis's office.

### F.

In discussing patronage dismissals, the *Elrod* plurality conceded that "employees may always be discharged for good cause, such as insubordination or poor job performance, when those bases in fact exist." 427 U.S. at 366, 96 S.Ct. at 2686. While Dennis did not expressly label her reason for discharging Carver as insubordination, Carver's declaration of candidacy against Dennis under the circumstances of this case clearly was insubordination. While there is no support in the record for a claim that Carver was discharged for patronage or political reasons, or that she was discharged for speaking out on issues of public concern, the record permits no escape from the fact that Carver was fired for announcing her intention to take her boss's office. *See* 886 F.Supp. at 637.

### III.

In sum, we hold that no reading of the First Amendment required Dennis to retain Carver after Carver announced her intention to run against Dennis for Dennis's office. To hold otherwise, on the facts of this case, would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy. The First Amendment does not require that an official in Dennis's situation nourish the viper in the nest. Dennis's discharge of Carver did not implicate Carver's First Amendment rights.

The judgment for defendant Dennis is AFFIRMED.