Barbara WARREN, Plaintiff,

v.

Joe GASTON, individually and as Clerk of Cowley County; and the Board of County Commissioners of Cowley County, Kansas, Defendants.

No. 98–1165–JTM.

United States District Court, D. Kansas.

June 25, 1999.

Kenneth G. Gale, Adams & Jones, Chartered, Wichita, KS, for Plaintiff.

Alan L. Rupe, Kelly J. Johnson, Husch & Eppenberger, Wichita, KS, for Defendants.

*MEMORANDUM ORDER*

MARTEN, District Judge.

The plaintiff in the present action, Barbara Warren, alleges that her termination from employment with the Cowley County Clerk's Office in Cowley County, Kansas was the result of illegal retaliation for her running for the office of county clerk. Warren has brought claims against both Cowley County and County Clerk Joe Gaston for violation of her First Amendment rights and deprivation of due process. The defendants have moved for summary judgment, and for the reasons identified herein, the motion will be granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving

party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Findings of Fact

The Cowley County Clerk's Office has employed five to seven employees. Warren was employed in the office, where she performed clerical tasks such as registering voters. Defendant Gaston, a member of the Democratic Party, took office in 1989, after defeating Carmelita Clarkson, the previous county clerk's deputy, in the 1988 election. Clarkson ran as a Republican, and was supported by plaintiff Warren. After his election, Gaston named Clarkson his deputy clerk.

Some time after the election, the Cowley County Board of County Commissioners adopted an employee handbook. Warren signed a written statement acknowledging her receipt of the manual, which explicitly states county employment is at-will. It further states that the manual itself is not a contract of employment. Warren did not discuss the employee handbook with anyone from the county. She never discussed with anyone the nature and terms of her employment. She understood the employee handbook to mean that her employment could be terminated at will. Her understanding comported with the intent of the Board of County Commissioners in adopting the handbook.

In December 1995, Warren approached Gaston and told him she was thinking about running for county clerk at the next election. Gaston was still affiliated with the Democratic Party. Warren was a Republican.

On or about February 2, 1996, Warren assisted her son Vincent and her daughter-in-law Jennifer in registering to vote in Cowley County. The registration shows an address for Vincent and Jennifer identical to Warren's home in Winfield, Kansas. All of the handwriting on the registration cards is Warren's, except for the signatures. Warren knew at the time that Vincent and Jennifer did not live with her or in Cowley County, but lived in the town of Baxter Springs in Cherokee County, Kansas. Vincent Warren had not lived with his mother since 1991, when he graduated from high school. Vincent moved to Baxter Springs because of a job transfer by his employer. His wife Jennifer had never lived at Warren's address.

Vincent and Jennifer have testified that they registered in Cowley County because they thought their move to Baxter Springs was only temporary, and that they received some mail at Warren's address.

Warren formally filed for election in early May 1996. Gaston filed for re-election the same day. According to Warren, when she told Gaston she was running, he became very angry, and insisted that she personally file his own re-election papers. Warren asked for, and was given an administrative leave of absence.

The employee handbook provides:

Any employee desiring to hold such [elected] office shall resign or take unpaid leave from county employment upon filing for the office, except, if an incumbent elected official does not file for re-election by the filing deadline, then other county employees who have filed for the office shall not be required to resign or take leave from their position as a county employee.

This policy serves to promote the legitimate interest of the county in avoiding conflict in the workplace that could result where an employee serving an elected official challenges him or her for office. Warren did not ask Gaston or the county to waive the rule. She does not know of any other county employee who has run for office, other than Carmelita Clarkson. Warren believes that Clarkson took some form of a leave of absence when she ran for office.

The county allowed Warren to use her accrued paid leave (which ran out some time in June of 1996) before going on unpaid leave. During the campaign Warren spoke out in public forums about improvements she thought should be made to the operation of the clerk's office.

In the general election held November 5, 1996, the machine count of ballots showed that Gaston defeated Warren. Both Vincent and Jennifer told Warren that they had voted. In fact, both voted for Warren. Warren returned to work November 6, but went on leave with pay pending a vote recount. The recount also showed Gaston the winner. Warren returned to work after the recount.

On November 19, Warren filed a court challenge of the election results, and returned to administrative leave. Warren did not complain about being placed on administrative leave, and in fact did not think it was unfair.

During the election contest, Gaston's counsel deposed Warren, Vincent, and Jennifer. According to the defendants, it was through these depositions that Gaston first learned of Vincent and Jennifer's move to Baxter Springs at this time. There is some evidence suggesting that Vincent and Jennifer's move to Baxter Springs was common knowledge in the office during the summer ·of 1996 and that Gaston was aware of it at that time. However, there is no evidence Gaston knew of Warren's registration of Vincent and Jennifer as residents of Winfield.

In early February 1997, Warren dismissed her contest of the election. On February 5, 1997, Gaston wrote Warren a letter giving her the option of resigning or facing dismissal.

According to Gaston, he was concerned by Warren's registration of her son and daughter-in-law. He has testified that he felt her actions impugned her integrity and trustworthiness. It appeared to him that her registration of Vincent and Jennifer had been motivated by a desire for political gain.

Warren contends that Gaston's intent is a question of fact, and contends that he knew of their move to Baxter Springs. According to Warren, Gaston had expressed an intent to terminate Warren before the court challenge, and therefore before the depositions of Vincent and Jennifer revealed their actual residence. Warren also cites the testimony of county employee testimony that Gaston was "very mad" when he learned that Warren would be running against him. (Plf. Exh. C, Owen dep. at 20).[1]

There is no evidence of "termination threats." The evidence merely indicates that Gaston refused to keep Warren at work during the court challenge, not that he intended to fire her. Warren herself has indicated she did not think that was unfair. The remaining "threat" cited by

---

1. Warren also cites Gaston's deposition testimony, contending that he refused to deny considering firing Warren before the election contest. This somewhat misstates the deposition testimony. At the cited portion of his deposition, Gaston was asked if it was at least "possible" he had considered terminating Warren earlier. Gaston responded "Oh, anything is possible." (Gaston dep. at 146). This question and answer, however, only appear at the conclusion of a series of questions in which Gaston expressly states he could not remember the exact date when he decided to terminate Warren. When Gaston was specifically asked if it could have been prior to the election results challenge, he directly answers in the negative, stating that it was only through the election contest that the issue of Vincent and Jennifer's registrations was discovered. (Id.)

Warren, in which Gaston allegedly stated that he would not re-employ the plaintiff, was made during the recount, and it was never carried out since it is uncontroverted that Gaston allowed Warren to return to work after the recount.

On February 7, the county terminated Warren's employment. Warren filed a grievance. The employee handbook provides that an employee may be disciplined for actions which "reflect discredit upon governmental services of the County or directly hinder the effectiveness of the County government's operations." (Def. Exh. 25, at § 10.3).

The county grievance board found in favor of Warren, holding that her termination had been procedurally defective. The board wrote to Warren explaining its decision.

Under written county policy, the decision of the grievance board is advisory only, and is subject to automatic review by the Board of County Commissioners. In this case the board voted unanimously to affirm the grievance and award Warren backpay. The board did not prohibit Gaston from terminating Warren, but rather spelled out the procedure he was required to follow if he chose to terminate her. After its decision, the board placed Warren on paid administrative leave.

Gaston subsequently sent Warren a second letter, stating he was contemplating her dismissal. Gaston wrote that Warren's actions in registering Vincent and Jennifer with a Winfield address was a violation of her job duties, and that she had ten days to respond. Warren has testified that the letter gave her adequate notice of the charges against her.

On June 5, 1997, Warren met with Gaston in person to discuss her employment status. Warren and Gaston specifically discussed Warren's registration of Vincent and Jennifer. During the meeting, Gaston asked Warren if she felt she could get along with other employees. The defendants assert that Warren admitted she had

difficulty getting along with other employees. This somewhat distorts the evidence. According to Warren, she told Gaston "It's a professional office, we are professionals." (Warren dep., Def. Exh. 6, at 180). There is nothing in Warren's cited deposition testimony suggesting Warren was confessing to any significant problem in dealing with co-workers.

On June 13, Gaston wrote to Warren stating she was terminated. Warren filed a second grievance. In this proceeding Warren was represented by counsel and witnesses testified.

The grievance board voted to recommend Warren's reinstatement. The board voted 2—1 to affirm the termination. The two board members who voted to affirm the termination were Gerald Lawrence and Dick Bonfy. Both were concerned by the appearance of impropriety, given Warren's work in the county clerk's office and charge of overseeing elections, and questioned her judgment and honesty. It is uncontroverted that both Lawrence and Bonfy heard from other county employees that they would have a difficult time getting along with Warren if she were reinstated, and that they were concerned about the resulting disruption if Warren was reinstated. It is further uncontroverted that neither Lawrence nor Bonfy, who, like Warren, are Republicans, were motivated to vote against her because of her political affiliation or because she had run for office against Gaston.

Charla Poage, a friend of Warren's, attended the county commission meeting which affirmed the termination. Warren knew about the meeting but chose not to attend. After the meeting, Poage went to Warren's house to tell her of the board's decision.

Warren found new employment as of December, 1997. She now works for Curopopulus and the Arkansas City Red Cross.

Warren had a good work record until her discharge. She is the only person Gaston has fired from the clerk's office.

Gaston's attorney during the election challenge was privately retained. In determining that Jennifer and Vincent's registrations were illegal, Gaston did not consult with either the County Attorney or the Kansas Secretary of State.

### Conclusions of Law

■ The parties separately discuss whether Warren had a protected First Amendment interest in (1) her continued employment during her candidacy; and (2) her employment after the election. The court must conclude that both claims fail in light of the uncontroverted evidence. As to the claim that Warren suffered an unconstitutional deprivation because she was placed on a leave of absence, the court finds the claim is without merit. First, the leave of absence was prescribed as the result of a prior, written, neutrally-applied policy which, as applied here, serves a legitimate government interest in minimizing conflict in elected offices during a political campaign. *Lytle v. City of Haysville,* 138 F.3d 857, 863 (10th Cir.1998). Second, it is uncontroverted that Warren asked for and obtained the leave of absence, never protested its application, and in fact has testified that she thought it was fair.

■ As to the broader question of whether Warren's candidacy was itself a protected interest, the court must reject such a conclusion. In her brief (Resp. at 24–31), Warren provides an extensive series of case citations to different cases in which courts have recognized that government employees have protected First Amendment rights. The problem for the plaintiff is that none of these cases involve the fact situation presented here: whether a government employee, who seeks to displace her supervisor by becoming a candidate for his position, has the right to continued employment with the incumbent after the election.

All of the cases cited by plaintiff involve attempts to control fundamental aspects of First Amendment freedoms: attempts to prohibit government employees from running for the state legislature (*Laidley v. McClain,* 914 F.2d 1386 (10th Cir.1990)); or attempts to prevent employees from supporting a rival to the incumbent (*Durant v. Independent School Dist. No. 16,* 990 F.2d 560 (10th Cir.1993)). But it is one thing for an incumbent to try and fire employees who do not belong to the right party, who fail to support the incumbent, or who support the opponent. It is another for the employee to actually *become* the opponent and still expect continued employment. The court has been unable to find any case which has extended First Amendment interests this far, and it may be noted that the plaintiff, in her extended discussion of First Amendment principles, never cites such a case.

In contrast, there is authority which directly states that First Amendment rights are not this expansive. In *Carver v. Dennis,* 104 F.3d 847, 850–51 (6th Cir.1997), the Sixth Circuit recognized that the Supreme Court "has never recognized a fundamental right to express one's political views through candidacy." In *Carver,* the plaintiff was a deputy county clerk who was dismissed when she announced that she was running for the office of county clerk. The incumbent conceded that he would not have removed her if she had not entered the race. The district court granted summary judgment on plaintiff's claim, and the Sixth Circuit affirmed, concluding that the existing case law did not require the incumbent to "nourish the viper in the nest." 104 F.3d 853.

As in *Carver,* there is no suggestion here that Warren was terminated because of her particular political views. Rather, the essence of Warren's case is that she was terminated because of her candidacy. Under *Carver,* that does not implicate a First Amendment right.

■ There are other reasons to dismiss the First Amendment claims. First, under

these facts the county cannot be held responsible for Warren's termination, since the plaintiff has done nothing to show the termination was the result of a county policy or custom. The plaintiff argues the decision of the county clerk was the decision of the county, since it was within his authority under the law and there was no "meaningful review" of Gaston's decision. The plaintiff's argument is not well-grounded in the facts. The evidence establishes that Gaston's decisions were independently reviewed by both a grievance board and then by the Board of County Commissioners. That this was not a rubber stamp is shown by the fact that Gaston's initial decision to terminate Warren was reversed with the directive that she be given clearer notice of the charges against her. Further, the independence of the review may be reflected in Warren's concession that the commissioners who voted against her appeal were Republicans who were not motivated against her by any political animus. Warren complains the review was not meaningful since the board did not fully set forth its rationale for upholding Gaston's decision. First, it is not clear that meaningful review requires any lengthy opinion. Moreover, the uncontroverted facts establish that Warren knew the essential nature of the charges against her, knew the time of the board meeting, and simply chose not to attend. The board can hardly be faulted for not speaking at length when Warren was rather pointedly not listening.

■ As to defendant Gaston, the court additionally finds he is protected under the doctrine of qualified immunity. That is, even assuming Gaston terminated Warren in retaliation for her candidacy and that that candidacy was a protected First Amendment interest, the point made in *Carver* remains true: no case has ever held such a candidacy was a protected interest. Accordingly, qualified immunity would seem appropriate.

■ In addition, even assuming there was a protected interest in the candidacy, there are grounds for holding that termination would still be appropriate. Under *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), claims of free speech deprivation involve a determination of whether the speech addressed a matter of public concern, a balancing of the employee's interest in the speech and the government's interest in an efficient workplace, a determination that the speech was a substantial motivation in the challenged government action, and a determination of whether the employee would have been terminated in any event. In this case, the defendants have shown grounds for dismissal under the second factor. That is, even if Warren's candidacy was a protected interest, it was met by, and the court finds, outbalanced by, the county's interest in avoiding conflict in the small-office environment of the clerk's office.

Finally, the action must be dismissed since Warren has failed to provide evidence that the defendants acted with retaliatory intent. As noted earlier, Warren has *conceded* as uncontroverted that she has no evidence the county commissioners who voted to affirm her removal were motivated by either her candidacy or her political views. (Resp. at 29, ¶ 34). Warren argues that a retaliatory motive was shown by Gaston because he was very angry when he learned that she was running, and that his concern over the registration of Vincent and Jennifer was a pretext, since he already knew they lived out of the county. On learning that a subordinate will be running against an office holder, that office holder ought to be allowed to express some disappointment without it being evidence of a secret, malicious retaliatory intent. Such a reaction would be almost universal. As to the alleged "termination threats," these turn out on examination to be either (1) simply adherence to county policy of keeping Warren on leave of absence during the campaign (a policy which Warren thought was fair), or (2) a statement during the

recount that Gaston did not want Warren to return to work. The fact is, of course, that Gaston did allow Warren to return to work, and that she was terminated only after the discovery of the circumstances of Vincent and Jennifer's registration.

■ An inference of retaliatory intent exists only—if at all—in connection with Warren's argument that Gaston's concern over the Vincent and Jennifer registration was a transparent pretext for a retaliatory intent. The court finds Warren's argument misses the point and that Gaston's concern over the registration should not be viewed as a pretext for retaliation.

Warren contends that the registrations of her son and daughter-in-law were legal, that while they may have resided in Baxter Springs in 1996 this was simply the result of a temporary move, and that Gaston knew this prior to the election. The evidence does not support these contentions. First, the evidence shows only that, at the relevant time, Gaston knew Vincent Warren and his wife were actually living out of the county at the time they wished to submit absent ballots. There is no evidence to contradict his explicit testimony that he did not learn of Warren's completion of the false or misleading registration forms until the election challenge.

The plaintiff's argument is that Vincent and Jennifer were entitled to vote under Kansas law, since they intended someday to return to Winfield. In this context, the plaintiff cites K.S.A. 77–201, *Twenty-third* and *Campbell v. Ramsey,* 150 Kan. 368, 92 P.2d 819 (1939) for the proposition that under Kansas law, the intent of the registrant controls. The plaintiff is correct that intent is an important consideration, but wrong to the extent that it suggests it is the only one. The statute cited by plaintiff is the general definition of residence under Kansas law. K.S.A. 25–407 is the more specific statute, entitled the "Rule for determining residence of voter," but it provides the same definition of "residence" as "the place adopted by a person as such person's place of habitation, and to which, whenever such person is absent, such person has the intention of returning." That this determination is not based solely on intent has been recognized by the Kansas Supreme Court, which has stated that a citizen has the right to change his residence permanently or temporarily, and that "[w]hether he does so, or which he does, is determined by *his acts* and his intentions." *State v. Corcoran,* 155 Kan. 714, 719 128 P.2d 999 (1942) (emphasis added).

Thus, in the case of the registrations of Vincent and Jennifer, their status as lawfully registered voters would require a consideration not only of their generalized intent, but also their objective actions evidencing their intent. No such evidence is before the court, but it is unnecessary because plaintiff's argument wholly misses the point. The question here is not whether Vincent and Jennifer Warren were lawfully registered to vote in November 1996 in Cowley County under Kansas law. The question is whether defendant Gaston could have been reasonably concerned over the plaintiff's conduct in registering Vincent and Jennifer on February 2, 1996.

In the registration forms completed by plaintiff Warren on that date, Vincent and Jennifer did not represent that at some time in the future they might reside at 1407 E. 11th in Winfield. They signed forms showing that address and which further explicitly state:

I am a citizen of the United States; I am of the age of eighteen (18) and upwards, or I will have reached the age of eighteen (18) years before the next election; *I reside at the address first above mentioned and I have abandoned any such other and former residence.* I do solemnly swear that the above is a true and correct statement, and this I do under the pains and penalties of perjury.

(Def.Exh. 12) (emphasis added). This attestation required of the registrant is clearly stated in the present tense. In completing the registration forms, Vincent

and Jennifer were swearing—falsely—that they lived at Warren's residence on February 2, 1996. At that time, Vincent had not lived at that residence for five years, and Jennifer had never lived there. Warren, who prepared the form, would also have known it was false and misleading.

Even if somehow Vincent and Jennifer might somehow be considered lawfully registered voters, the uncontroverted fact remains that the plaintiff assisted the false representations made in Defendants' Exhibit 12. That Gaston, as her supervisor, was disturbed by this is entirely natural.

■ The court finds that Gaston's action is not attributable to the county and that Gaston is entitled to qualified immunity, that Warren did not have any protected interest in her candidacy, that the county had a larger, countervailing interest in ensuring small office harmony, and plaintiff has failed to show that the termination over the false registrations was a pretext for illegal retaliation. As to the remainder of the case, the plaintiff's response drops any argument relating to substantive due process. The only substantial remaining element of the case is thus the argument Warren was deprived of procedural due process. The court finds this claim must be dismissed. Warren had notice of the charges against her. Although she argues that she was stigmatized by news reports of the termination, Warren cites no evidence linking county officers with any stigmatizing description of the events surrounding the termination. The court holds that Warren, who acknowledges she was an at-will employee, had no property interest in continued employment and the decision to terminate her was neither arbitrary nor capricious.

IT IS ACCORDINGLY ORDERED 25th day of June, 1999, that the defendants' motion to dismiss (Dkt. No. 30) is hereby granted.