**OHIO CITIZEN ACTION, Plaintiff,**

v.

**CITY OF AVON LAKE, Defendant.**

No. 1:96 CV 1449.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 24, 1997.

Edward A. Icove, Lustig, Icove & Lustig, Cleveland, OH, Kirk B. Roose, Roose & Birmingham, Oberlin, OH, for plaintiff.

Geoffrey R. Smith, Smith & Smith, Avon Lake, OH, Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, for defendant.

## ORDER

SAM H. BELL, District Judge.

### I. *INTRODUCTION*

Now before the court is a motion for partial summary judgment filed by Plaintiff Ohio Citizen Action ("OCA"). (Docket # 21.) OCA is a non-profit political organization dedicated to raising public awareness regarding issues related to the environment and public health. As part of its activities, OCA solicits funds from private donors and attempts to influence public opinion by going door-to-door through various community neighborhoods, OCA wishes to conduct such door-to-door activity, or "canvassing," within the limits of Defendant City of Avon Lake ("Avon Lake" or "the City"). Like many communities, Avon Lake regulates canvassing within its city limits through various city ordinances. These ordinances place limits on when and how individuals may solicit funds and distribute information.

OCA asserts that Avon Lake's regulations and requirements for canvassing effectively deprive it of its right to free speech under the First Amendment to the United States Constitution. Consequently, it filed the instant suit against Avon Lake, in which it seeks money damages and injunctive relief. Upon consideration of OCA motion, the court finds that OCA is entitled to judgment as a matter of law, at least in part, on the issue of liability. Therefore, the court shall grant OCA's motion in part. This court has jurisdiction over this case under 28 U.S.C. § 1331.

### II. *BACKGROUND*

As a non-profit public interest group, OCA distributes information to and solicits financial support from individual households in different communities throughout Ohio. It does so in order to build public support for its position on a variety of issues. OCA has engaged in its informational and fundraising activities since at least 1984.

Among those communities which OCA has targeted in Ohio is the City of Avon Lake. Avon Lake is a suburban community located west of Cleveland, Ohio in Lorain County. On May 9, 1994, the Avon Lake City Council passed legislation amending Chapter 840 of the Avon Lake Codified City Ordinances. Chapter 840 governs all canvassing and door-to-door solicitation within Avon Lake. In that chapter, the Council defines "canvassing" and "solicitation" as follows:

> "Canvassing," "canvasser," "solicitation" and "solicitor" include any person who calls at residences or places of businesses without the invitation or previous consent of the owners or occupants of such premises for the purpose of any one or more of the following activities:
>
> . . .
>
> (4) Seeking to obtain contributions or to sell goods, articles or services of any kind for the support or benefit of any charitable, religious or nonprofit association, organization, corporation or project;
>
> (5) Seeking to obtain, from an occupant of any residence, an indication or such occupant's belief in regard to any social, political or religious matter;

(6) Seeking to influence the personal belief the occupant of any residence in regard to any social, political or religious matter; or

(7) Taking a poll or census by any person, firm or corporation other than a governmental body or agency thereof.

Avon Lake, OH, Cod. Ord. § 840.01(a) (1995).

As it had previously, Chapter 840 requires that certain groups or individuals first obtain a certificate of registration from the Police Chief before engaging in any canvassing or solicitation activities.[1] Specifically, the scheme requires a permit of those who canvass "for charitable or religious purposes." *Id.* at § 840.05. A "canvasser for charitable or religious purposes" is

> any person who calls at residences or places of business without the invitation or previous consent of the owners or occupants of such premises for the purpose of soliciting or receiving contributions or pledges for charitable or religious purposes, or to offer or attempt to sell, or request a donation for, any advertisement, advertising space, book, card, chance, coupon, device, magazine, merchandise, ticket, token, flag, souvenir, foodstuff, service or any other article or thing in connection with which any appeal is made with any such sale, donation or contribution, any statement is made that the whole or any portion of the proceeds of any such sale will go to or be donated to any charitable or religious purpose.

*Id.* at § 840.01(b). To apply for a permit, a party must provide a variety of information, including:

(a) The name, age, social security number and physical description of the applicant;

(b) A complete permanent and local address of the applicant along with the social security number of the tax identification number of the applicant's employer;

(c) The name and address of the person, firm, corporation or association for who or which the canvassing, soliciting or peddling is presently being made and any other person, firm, corporation or association for

whom or which the applicant has solicited during the past three years;

(d) A general description of the nature of the business and the goods, services or wares to be sold, or a description that is otherwise sufficient to identify the subject matter of the canvassing, soliciting or peddling in which the applicant will engage;

(e) The names of all municipalities in which the applicant has conducted canvassing, soliciting or peddling activities during the past twelve months;

(f) A statement as to whether the applicant has complied with the requirements of Ohio R.C. Chapter 1716 pertaining to charitable solicitations, if applicable;

(g) A statement as to whether the applicant has ever had a permit revoked, including the time and place of such revocation;

(h) A statement as to whether the applicant has ever been convicted of a felony violation or a misdemeanor violation involving moral turpitude, including the time and place of such conviction;

(i) The proposed dates and times of the canvassing, solicitation or peddling;

(j) The make, model, year, color and license plate number of automobiles used by the applicant during the period of canvassing, solicitation or peddling within the City, and the number of the applicant's driver's license and the state of issuance of such license;

(k) Two photographs of the applicant of appropriate size (approximately two inches by two inches), one of which shall be attached at all times to the certificate and the other of which shall be for the records of the Police Department;

. . .

(m) The City Income Tax Form which shall be filled out and filed with the application.

*Id.* at § 840.06. In addition, an applicant may be required to provide the Police Chief with

---

**1.** Chapter 840 actually requires a certificate from the "City Safety Director." Avon Lake, OH, Cod. Ord. § 840.05 (1995). But in its memoranda and other communications, the City refers to the City Safety Director as the Chief of Police. Therefore, the court shall presume that they are in fact one and the same person.

fingerprints, "if requested." *Id.* at § 840.06(1).

The Police Chief must then issue a certificate not more than ten working days after he receives a completed application, unless he finds

> (1) [t]hat the applicant has misrepresented his or her identity or intention, or made a false, misleading or deceptive statement in providing the information required . . .; or
>
> (2) [t]hat the applicant has been convicted, during five years preceding the date of application, of a felony or of a misdemeanor involving moral turpitude or force or violence.

*Id.* at § 840.07(a).

Not all religious or charitable canvassers, however, must apply for the certificate. In particular, the scheme exempts an individual "if such individual is seventeen years of age or younger, and is soliciting contributions or offering for sale any goods for any religious, charitable, civic, educational or political organization, or is so soliciting for a newspaper or something personally manufactured, raised or produced, or is rendering personal services to be performed by the solicitor." *Id.* at § 840.04(d).

Furthermore, in addition to the certificate requirement, the scheme prohibits any canvasser "from engaging or attempting to engage in a home solicitation transaction before 9:00 a.m. or after thirty minutes following sunset of any day, Monday though Saturday, or at any time on a Sunday on the weather page of the official newspaper of the City as the time for sunset on that day in the City." *Id.* at § 840.04(d).

On June 22, 1994, OCA applied to the City for a canvassing permit. (Pl.'s App. Ex. C.) In its letter of application, OCA informed the Avon Lake Police Chief Richard Hunt that it "wished to conduct a door-to-door canvass . . . during the period of June 29, 1994 until August 15, 1994 . . . involv[ing] literature, discussion, petitioning and furnishing on environmental issues." (*Id.*) In response, Hunt refused to grant OCA a permit as requested. Instead, he sent it a copy of the revised Chapter 840. In 1995 and 1996, OCA again requested that the City grant it a canvassing permit. (Pl.'s App. Ex. E and I.) In addition, it requested that the City exempt it, as is provided under the ordinance, from various registration requirements. (*Id.*) As before, the City declined.

## III. SUMMARY JUDGMENT

In *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993), the Sixth Circuit Court of Appeals summarized the standard of review governing motions for summary judgment under Federal Rule of Civil Procedure 56:

> Summary judgment is appropriate where "there is no genuine issue of material fact . . . and the moving party is entitled to judgment as a matter of law." . . . [The] court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.
>
> The moving party has the burden of conclusively showing that no genuine issue of material fact exists. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim.
>
> "By its very terms, this standard provides that the existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted."

(citations omitted). Thus, the court shall analyze the Defendant's present motion with this standard in mind.

## IV. LAW AND ANALYSIS

### A. Ripeness and Standing

OCA initially argues that the Avon Lake's canvassing permit scheme is facially invalid in that it vests unbridled discretion in

the hands of the City Police Chief. In response, the City asserts that OCA has not even applied for a permit, rendering its claims regarding the registration scheme unripe for determination. According to OCA, it has in fact applied for a permit at least once, in 1994. (*See* Pl.'s App. Ex. C.) In any event OCA, need not apply for a permit at all before filing suit to challenge the permit requirement. The United States Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity or first applying for, and being denied, a license." *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 224 (6th Cir.1995)(quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)); *see also DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 414 (6th Cir.1997) (holding that "a plaintiff need not go through the formality of submitting an application in a facially unconstitutional licensing scheme") (citing *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737–38, 13 L.Ed.2d 649 (1965)). In addition, the Court has held that a party may challenge a regulatory scheme as overly broad even if its own activities could be limited by an appropriate ordinance. *Forsyth County Ga. v. The Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992). Therefore, the court finds that it may consider OCA's challenge to the City's registration scheme.

### B. Canvassing as Speech

■ Under Chapter 840 of Avon Lake's Codified Ordinances, certain individuals or groups wishing to canvass within the City's limits must first register with the City Police Chief and must limit their activities thirty minutes after sunset. "Canvassing," as defined in Chapter 840, includes both information distribution, such as pamphletting, and solicitation of funds. Both of these activities have long been treated as "speech" under the First Amendment. For example, in *Schneider v. State*, 308 U.S. 147, 164, 60 S.Ct. 146, 152, 84 L.Ed. 155 (1939), the Supreme Court observed that "pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of people." More recently, in *McIntyre v. Ohio Elec. Comm.*, 514 U.S. 334, 347, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (1995), the Court held that "handing out leaflets in the advocacy of a politically controversial viewpoint—is the essence of First Amendment [expression]" and that "no form of speech is entitled to greater constitutional protection." (citing *Int'l Soc. for Krishna Consciousness v. Lee*, 505 U.S. 672, 112 S.Ct. 2711, 120 L.Ed.2d 541 (1992)). Moreover, the Court has held that canvassing remains a form of protected speech even when intertwined with a solicitation for money, *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 633, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980) ("[O]ur cases long have protected speech even though it is in the form of . . . a solicitation to pay or contribute money.") (citations omitted).[2] As a result, this court must determine whether Avon Lake's registration scheme impermissibly burdens OCA's canvassing activities, such that it infringed OCA's rights under the First Amendment.

2. As the Court explained in *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826, 833, 63 L.Ed.2d 73 (1980),

> charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, tie dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely ease. Canvassers in such contexts are necessarily more than solicitors for money. Furthermore, because charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it has not been dealt with in our cases as a variety of purely commercial speech.

## C. Content–Based Restrictions

The First Amendment provides that government "shall make no law abridging the freedom of speech." United States Const. Amend. I.[3] In furtherance of this principle, the Supreme Court has consistently stood vigilant against legislative enactments which substantively deny individuals of their free speech rights. In particular, the Court has held little regard for laws which regulate speech on the basis of its content. As it noted in *Forsyth Co., Ga. v. The Nationalist Movement*, 505 U.S. 123, 135, 112 S.Ct. 2395, 2404, 120 L.Ed.2d 101 (1992), "[t]his court has held time and again: 'Regulations which permit the government to discriminate on the basis of the content of the message cannot be tolerated under First Amendment.'" (citing *Regan v. Time, Inc.*, 468 U.S. 641, 648–649, 104 S.Ct. 3262, 3266–3267, 82 L.Ed.2d 487 (1984); *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 116, 112 S.Ct. 501, 508, 116 L.Ed.2d 476 (1991); *Arkansas Writers' Project v. Ragland*, 481 U.S. 221, 230, 107 S.Ct. 1722, 1728, 95 L.Ed.2d 209 (1987)).

The City registration requirement is just such a content-based restriction. The "principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech 'without reference to the content of the regulated speech.'" *Madsen v. Women's Health Ctr., Inc*, 512 U.S. 753, 763, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593 (1994) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989)). In this case, the registration scheme exempts certain canvassers from the certificate requirement solely on the basis of the content of their speech, Specifically, any individual under the age of eighteen "soliciting for a newspaper or something personally manufactured, raised or produced or is rendering personal services to be performed by the solicitor" need not obtain a registration certificate. Conversely, if that same individual solicits for any other product or service, and does not register before commencing his activities. Thus, the City's "enforcement authorities must necessarily examine the content of the message that is conveyed" by the young solicitor. *Arkansas Writers' Project Inc. v. Ragland*, 481 U.S. at 230, 107 S.Ct. at 1728 (citing *FCC v. League of Women Voters of California*, 468 U.S. 364, 383, 104 S.Ct. 3106, 3119, 82 L.Ed.2d 278 (1984)). "Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 827–829, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995). Consequently, the court finds that the City's limited application of the registration requirement violates the limits on government restrictions of speech established under the First Amendment.

## D. Content–Neutral Restrictions

Even as a content-neutral restriction, the City's scheme is subject to strict requirements imposed by the Court. In *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673,

---

3. As recently noted by the Sixth Circuit Court of Appeals, "[t]he Supreme Court has long held that the Fourteenth Amendment makes the First Amendment applicable to the states," including local government. *Carver v. Dennis*, 104 F.3d 847, 849 (6th Cir.1997) (citing *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 629–630, 69 L.Ed. 1138 (1925)).

In *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 336, 115 S.Ct. 1511, 1514, 131 L.Ed.2d 426 (1995), Justice Stevens explained this principle as follows:

The term "liberty" it the Fourteenth Amendment to the Constitution makes the First Amendment applicable to the States. The Fourteenth Amendment reads, in relevant part: "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const., Amdt. 14, § 1. Refer-

ring to that Clause in his separate opinion in *Whitney v. California*, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927), Justice Brandeis stated that "all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States. The right of free speech, the right to teach and the right of assembly are, of course, fundamental rights." *Id.* at 373, 47 S.Ct. at 647 (Brandeis, J., concurring). Although the First Amendment provides only that "Congress shall make no law ... abridging the freedom of speech ...," Justice Brandeis' view has been embedded in our law ever since. See *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 779–780, 98 S.Ct. 1407, 1417–1418, 55 L.Ed.2d 707 (1978); see also Stevens, *The Bill of Rights: A Century of Progress*, 59 U.Chi. L.Rev. 13, 20, 25–26 (1992).

20 L.Ed.2d 672 (1968), the Court established a four-part test that encompasses these requirements.

◼ [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial government interest; [3] if the government interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States v. O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. Almost 30 years later, *O'Brien* continues to serve as the benchmark against which facially neutral legislation is measured. *See Turner Broadcasting System, Inc. v. FCC,* —— U.S. ——, ——, 117 S.Ct. 1174, 1186, 137 L.Ed.2d 369 (1997) (applying the aforementioned *O'Brien* test to content-neutral restrictions on public broadcasting); *Barnes v. Glen Theatre,* 501 U.S. 560, 566–568, 111 S.Ct. 2456, 2460–2462, 115 L.Ed.2d 504 (1991) (applying the *O'Brien* test as the correct standard with which to evaluate a First Amendment challenge to a nude dancing ordinance); *DLS, Inc. v. City of Chattanooga,* 107 F.3d 403, 409 (6th Cir. 1997) (applying *O'Brien* to uphold the a City content-neutral ordinance affecting the conduct of nude dancing in that municipality).

◼ As noted above, the City requires that any permit applicant submit fingerprints, but only "if requested." OCA challenges this provision as an impermissible restriction on its First Amendment rights. In response, the City argues that requiring canvassers to submit fingerprints is not in itself unconstitutional. Indeed, at least one Circuit, the Third Circuit Court of Appeals, has held that, under certain circumstances, a municipality can require that prospective canvassers submit fingerprints. *See New Jersey Citizen Action v. Edison Twp.,* 797 F.2d 1250, 1265 (3rd Cir.1986) (acknowledging that a government may impose a fingerprint requirement if it shows "that there is a sub-

stantial relation between the regulation and some legitimate and important state interest").[4]

◼ But "a government: regulation that allows arbitrary application is 'inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular viewpoint.'" *Forsyth County, Ga. v. The Nationalist Movement,* 505 U.S. at 130, 112 S.Ct. at 2401 (citing *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 649, 101 S.Ct. 2559, 2565, 69 L.Ed.2d 298 (1981)). Avon Lake's fingerprinting requirement, regardless of the City Council's intentions, is a perfect example of this potential. The regulatory scheme provides no standards at all to guide the Chief of Police in deciding whether or not to request an applicant's fingerprints. Nor is the Chief mandated to require fingerprints of *all* applicants instead, an applicant is subject completely to the whim of the Chief and his staff. This is not to say that the Chief has been particularly arbitrary in demanding fingerprints of OCA, or of any other applicant. *Cf. Forsyth County, Ga. v. The Nationalist Movement,* 505 U.S. at 129, 112 S.Ct. at 2400–2401 (noting that "it is well-established that in the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable"). But the court does find that the potential for arbitrary action is undeniable, for only those applicants who are requested to submit fingerprints to the Chief must do so. Thus, the court finds that the requirement is invalid as a matter of law.

◼ In addition, OCA argues that the sunset provisions are also an invalid content-neutral restriction. The provisions require that no person may solicit anyone at home 30 minutes after sunset. Various courts have considered the constitutionality of such a limitation on canvassing, and have found a variety of sunset provisions to violate the limita-

---

4. In *Iacobucci v. City of Newport,* 785 F.2d 1354 (6th Cir.1986), the Sixth Circuit Court of Appeals upheld a fingerprinting requirement for employees of establishments serving alcohol. The court noted, however, that no fundamental constitutional rights, including free speech rights, were at issue in the case. *Id.* at 1355

**462**

tions on legislative action imposed by the First Amendment. *See, e.g., City of Watseka v. Illinois Public Action Council,* 796 F.2d 1547 (7th Cir.1986), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987); *New Jersey Citizen Action v. Edison Twp.,* 797 F.2d 1250 (3d Cir.1986); *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248 (7th Cir. 1985); *Association of Community Organizations for Reform v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983); *West Virginia Citizens Action Group, Inc. v. Daley,* 324 S.E.2d 713 (W.Va.1984). Neither the Sixth Circuit Court of Appeals nor the Supreme Court has considered the issue. But as noted above, the Sixth Circuit has held that, in general, a content-neutral restriction must satisfy the requirements set forth in *O'Brien.* Under *O'Brien* the City must establish, at a minimum, that: (1) its sunset provisions further substantial government interest; and (2) those provisions allow for reasonable alternative channels of communications. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 50, 106 S.Ct. 925, 930, 89 L.Ed.2d 29 (1986) (citing *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984); *International Society for Krishna Consciousness,* 452 U.S. at 649, 654, 101 S.Ct. at 2564–2565, 2567.)

The court finds that significant issue of fact remain in dispute regarding both these questions. The City asserts that its provisions protect the safety and welfare of both the citizenry of Avon Lake and the canvassers themselves. It specifically contends that many areas of the City are not well-lit and do not have sidewalks. In addition, notes that many citizens have complained to the City about the annoyance of solicitors after dark. (Urbin Dep. at 10, 21, 80.) A municipality has a legitimate interest in "protect[ing] its citizens from crime and undue annoyance." *Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610,

616, 96 S.Ct. 1755, 1758, 48 L.Ed.2d 243 (1976). Consequently, a reasonable jury could find that the City imposed its sunset provisions to address a legitimate safety concern.

That same jury could also find that the provisions "[allow] for reasonable alternative channels of communication." As OCA itself notes, (Mem. in Supp. Mot. for Part. Summ. J at 10), the City has identified a host of alternatives, besides canvassing after sunset, that would allow OCA to promulgate its message. These alternatives include telephone solicitation, daylight hour canvassing, television/radio access, cable television, public library displays, mailing, newsletters, and flyers. (Pl.'s App. Ex. N at ¶ 21.) OCA argues that it has considered each of these alternatives, and has found none of them to be as effective as canvassing. (Pl.'s App. Ex. B at ¶ 5–6.) The jury, however, not OCA, must ultimately decide that question, and the court finds sufficient evidence to support the City's position. For example, the City itself owns a television station and provides individuals and organizations the opportunity to develop and present programming. These parties may also be interviewed during other programs which are broadcast. In sum, the court finds that a genuine issue of material fact remains as to the OCA's access to reasonable alternative means of communication. As a result, the court shall not grant OCA's motion as it relates to its challenge to the City's sunset provisions.[5]

Finally, OCA argues that the City's regulatory scheme imposes a prior restraint on speech, but does not provide for prompt judicial review. When a legislative body imposes any prerequisite to engaging in constitutionally protected expression, that body is said to have imposed a "prior restraint" on speech. *See Freedman v. Maryland,* 380 U.S. 51, 54, 85 S.Ct. 734, 736–737, 13 L.Ed.2d 649 (1965). Prior restraints are not *per se* unconstitutional. Nevertheless, the Court has long established that "there is

5. OCA also asserts that the regulatory scheme's use of the term "solicitation" is overly broad and vague. " '[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.' " *Id.* (citing *Shuttlesworth v. Birmingham,*

394 U.S. at 151, 89 S.Ct. at 938). In § 840.01(a) of the City's Codified Ordinances, however, the scheme provides such standards, for it defines solicitation to include a variety of specific activities. *See* Avon Lake, OH, Cod. Ord. § 840.01(a) (1995). Consequently, the court finds no merit in OCA's assertion.

a heavy presumption against the validity of a prior restraint...." *Forsyth County, Ga. v. The Nationalist Movement,* 505 U.S. at 130, 112 S.Ct. at 2401. *See also Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975); *Lovell v. Griffin,* 303 U.S. 444, 451–452, 58 S.Ct. 666, 668–669, 82 L.Ed. 949 (1938); *Cantwell v. Connecticut,* 310 U.S. 296, 306–307, 60 S.Ct. 900, 904–905, 84 L.Ed. 1213 (1940); *Cox v. New Hampshire,* 312 U.S. 569, 574–575, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1941); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–151, 89 S.Ct. 935, 938–939, 22 L.Ed.2d 162 (1969).

In *FW/PBS v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Court struck down a Dallas, Texas licensing scheme which imposed a prior restraint on sexually-oriented businesses. In particular, the Court found that the prior restraint scheme impermissibly burdened speech through its open-ended procedures and wide grants of discretion. The licensing scheme required adult bookstores, video arcades and other similar businesses to obtain a permit to operate. In light of the burden imposed on these businesses by the permit requirement the Court held that "undue delay results in the unconstitutional suppression of protected speech" *Id.* at 228, 110 S.Ct. at 606. It further held that "there must be the possibility of prompt judicial review in the event the license is erroneously denied." *Id.*

In *East Brooks Books,* the Sixth Circuit Court of Appeals considered a similar scheme enacted in Memphis, Tennessee. In that case, the Circuit struck down a Memphis ordinance because it also did not ensure prompt judicial review. *Id.* at 224. The Circuit specifically found fault with the scheme's provision that allowed the chief of police to delay his duty to provide the Tennessee courts with a transcript of his decision to deny a permit application. *Id.* at 225. It also noted that even if the chief did provide the transcript promptly, an applicant might still have to wait as long as five months for judicial review of the decision. "An applicant may wait sixty days before an initial hearing before the Director of Police Services anti then—at a minimum—ninety days before ju-

dicial review. Although the Supreme Court has not expressly defined prompt judicial review, we believe that potential delays of over five months are impermissible." *Id.* In light of these circumstances, the Circuit concluded "that the licensing scheme fails to provide sufficient procedural safeguards and is unconstitutional." *Id.*

 Unlike these other regulatory' schemes, the scheme at issue in this case provides for adequate review. Under Ohio Rev. Code § 2506.01 (West 1997) "[e]very final adjudication, or decision of any officer tribunal, authority board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located...." Thus, an applicant may appeal the Police Chief's decision by filing a complaint in the Lorain County Common Pleas Court. As a result, this court shall deny OCA's motion as it relates to the availability of judicial review under the Avon Lake scheme.

## V. *CONCLUSION*

For the reasons described above, the court finds that Avon Lake's fingerprint requirement is invalid as a matter of law. However, the court also finds that the City's regulatory scheme provides for adequate judicial review, and that genuine issues of material fact exist regarding the City's sunset provisions. Therefore, the court hereby GRANTS IN PART and DENIES IN PART OCA's motion for partial summary judgment.

IT IS SO ORDERED.