OHIO CITIZEN ACTION, Plaintiff,

v.

CITY OF SEVEN HILLS, Defendant.

No. 1:98 CV 1205.

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 2, 1999.

Kirk B Roose, Roose & Birmingham, Oberlin, OH, for Ohio Citizen Action, plaintiff.

Richard A. Pignatiello, Seven Hills, OH, for City of Seven Hills, defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge David S. Perelman. The Court ADOPTS the Report and Recommendation (Document # 16), submitted on December 3, 1998, and FURTHER DETERMINES that §§ 167.01, 167.02, 167 .03, and portions of § 167.05, of the Codified Ordinances of the

City of Seven Hills, are facially unconstitutional.

### Factual and Procedural Background[1]

Plaintiff, Ohio Citizen Action, is a nonprofit organization that attempts to build political support for various legislative proposals and policies. Plaintiff engages in door-to-door canvassing throughout Ohio for the purposes of communicating and disseminating information, as well as for obtaining members, donations, and signatures on petitions.

Plaintiff claims that in 1993 it notified Defendant, the City of Seven Hills, that it intended to canvass in the City of Seven Hills. Defendant allegedly responded by informing Plaintiff that, per city ordinance, it required each canvasser to produce a police background check and that a 5:00 p.m. curfew applied. On or about February 20, 1996, Plaintiff mailed a letter to Richard Pignatiello, Defendant's Law Director, informing him of its nonprofit status and its intent to conduct door-to-door canvassing in the City of Seven Hills. Mr. Pignatiello responded on March 18, 1996, informing Plaintiff that the 5:00 p.m. curfew would be extended to 7:30 p.m., but that Plaintiff's canvassers were required to provide a police background check and comply with other application requirements. The next day, March 19, 1996, Plaintiff's attorney wrote to Mr. Pignatiello informing him that these conditions vested excessive discretion in municipal officers and were unconstitutional. Plaintiff's lawyers sent follow-up letters to Mr. Pignatiello in April 1996, June 1996, and March 1998. Defendant has maintained its position that the ordinances in question are constitutional.

Plaintiff filed this Complaint against Defendant on May 26, 1998, alleging that certain sections of Chapter 167—dealing with "Peddlers, Transient Dealers and Solicitors"—of the Codified Ordinances of the City of Seven Hills ("C.O." or "ordinances"), are unconstitutional and that Defendant unlawfully infringed on Plaintiff's constitutional rights. Plaintiff is requesting injunctive relief and damages. Plaintiff made these claims pursuant to 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution. Defendant filed its Answer on July 20, 1998, denying that the sections in question are unconstitutional and that Defendant infringed on Plaintiff's rights.

On September 3, 1998, Mr. Pignatiello asked Defendant's Chief of Police not to enforce the ordinances in question during the pendency of this litigation. Plaintiff maintains that, due to the ordinances, it did not canvass in the City of Seven Hills from at least July 1993 to August 1998. Under the ordinances, a violation of any section of Chapter 167 constitutes a minor misdemeanor and results in a fine of not more than $100.

On August, 27, 1998, this matter was referred to Magistrate Judge Perelman pursuant to Local Rule 72.2(a). On October 19, 1998, Plaintiff filed a Motion for Judgment on the Pleadings and for Partial Summary Judgment Regarding Liability. Defendant, on November 2, 1998, moved for a five-day extension of time to file a response; the Court granted the motion on November 4, 1998. Defendant failed to file a response. On December 3, 1998, Magistrate Judge Perelman submitted a Report and Recommendation to this Court. The Magistrate Judge recommended that "judgment be entered in plaintiff's favor on the issue of liability finding that the Seven Hills ordinances in question are unconstitutional as applied to plaintiff and enjoining further enforcement thereof as regards plaintiff's canvassing, reserving determination of damages (if any) for further proceedings." No objections to the Report and Recommendation have been filed.

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district

---

1. The factual background is based upon the parties' pleadings and Plaintiff's statement of facts. All facts presented and the inferences drawn therefrom are viewed in the light most favorable to Defendant, the nonmoving party.

court reviews the case *de novo.* FED. R.CIV.P. 72(b) provides this standard of review. It states, in pertinent part:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

The text of Rule 72(b) addresses only the review of reports to which objections have been made; it does not indicate the appropriate standard of review for those reports to which no objections have been properly made. The Advisory Committee on Civil Rules commented on a district court's review of *unopposed* reports by magistrate judges. In regard to subsection (b) of Rule 72, the advisory committee stated: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED.R.CIV.P. 72 advisory committee's notes (citation omitted).

The United States Supreme Court, in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), examined the proper standard of review that a district judge must employ when reviewing an unopposed magistrate judge's report. When confronted with the proposition that the failure to object to a magistrate's report waives only *de novo* review, but does not waive some lesser standard of review, the Court disagreed. The Court rejected the idea that Congress mandated *de novo* review, or in fact, *any* type of review in this context. The Court stated: "It does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Id.* at 150, 106 S.Ct. 466; *see also Smith v. Detroit Fed'n of Teachers, Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." (citations omitted)).

■ Although it is not expressly required by the Federal Rules of Civil Procedure or by the Supreme Court, this Court will conduct a *de novo* review of a magistrate judge's report to which no objections have been filed. In the absence of a clearly articulated standard for the review of an unopposed magistrate judge's report, this Court chooses to employ the standard which is provided by Congress for opposed reports within the text of FED.R.CIV.P. 72. Therefore, in the interests of justice and fairness to the parties, the Court will employ a *de novo* standard rather than the "clearly erroneous" or "abuse of discretion" standards.

## Discussion

The Court has reviewed the Report and Recommendation of this case *de novo. See Massey v. City of Ferndale,* 7 F.3d 506 (6th Cir.1993). After careful evaluation, the Court adopts the Report and Recommendation of the Magistrate Judge and further determines that §§ 167.01, 167.02, 167.03, and portions of § 167.05, of the Codified Ordinances of the City of Seven Hills, are facially unconstitutional.

### I. Standing

Plaintiff has properly demonstrated that it has standing to facially challenge these ordinances on the ground that they improperly delegate licensing discretion to an administrative office. "[A] licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship. And these evils engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (citations omitted). Thus, "it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly

drawn statute, and whether or not he applied for a license." *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *see also City of Lakewood*, 486 U.S. at 764, 108 S.Ct. 2138 (quoting *Freedman*).

## II. Plaintiff's Motion on the Pleadings

Federal Rule of Civil Procedure 12(c) states, in part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and answer.[2] If matters outside the pleadings are considered the motion must be treated as one for summary judgment. FED.R.CIV.P. 12(c). For purposes of the motion " 'all well-pleaded material allegations of the pleadings of the [non-movant] must be taken as true.' " *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991). In this case, the pleadings are closed and Plaintiff has properly moved for a judgment on the pleadings.

Plaintiff asks for declaratory and injunctive relief on the pleadings, arguing that §§ 167.01, 167.02, 167.03, and parts of § 167.05, represent a facially unconstitutional prior restraint on Plaintiff's protected communications. Defendant admitted in its Answer that Plaintiff's Complaint contained a current copy of the ordinances. For the reasons stated below, the Court agrees that the sections in question are a facially unconstitutional prior restraint because they give unbridled discretion to local officials to decide which persons and groups may receive a license to "sell or offer for sale, barter or exchange or go from door to door soliciting the purchase or gift of any goods or services in any place in, upon, along or through the streets, avenues, alleys or other public places within the Municipality...." C.O. § 167.01.

A prior restraint is a governmental attempt, often via ban or licensing, to suppress communication before it reaches the public. A system of prior licensing, as we have here, that controls "the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Forsyth County v. The Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Further, " 'a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.' " *Id.* at 131, 112 S.Ct. 2395 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)); *see also Niemotko v. Maryland*, 340 U.S. 268, 271, 71 S.Ct. 328, 95 L.Ed. 280 (1951). If a statute gives licensing officials overbroad and unbridled discretion because it lacks these proper standards for applying the law, it is void on its face. *City of Lakewood*, 486 U.S. at 755–57, 108 S.Ct. 2138.

Plaintiff's practice of canvassing—traveling door to door for the purpose of communicating ideas, enlisting members, gathering signatures, and soliciting donations—falls under Defendant's broad licensing scheme. It is well established that canvassing, and specifically the distribution of literature on the street and door to door, is in accordance with the best tradition of First Amendment expression, and thus receives the fullest constitutional protection. *See McIntyre v. Ohio Elec. Comm.*, 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). Likewise, canvassing while appealing for funds is "fully protected" by the First Amendment. *Riley v. National Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).

---

**2.** If a counterclaim, crossclaim, or third-party claim is interposed, a reply will normally mark the close of the pleadings. *See* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 1369 (2d ed.1990).

■ Plaintiff argues that § 167.02 gives unconstitutional discretion to a local official to decide "what is sufficient proof that [a] person is of good moral character." Section 167.02(a) reads:

No person who desires to sell or offer for sale, barter or exchange, or to solicit from door to door the purchase or gift of any goods, merchandise or other articles of value, money or services within the Municipality shall fail to make application to the Chief of Police who, upon being furnished with sufficient proof that such person is of good moral character, shall issue to the applicant a license therefor.

Plaintiff is correct. It is apparent from the face of the ordinance that there are no explicit limits on the Chief of Police's discretion. Nothing in the law defines "good moral character," outlines how much proof is "sufficient," or articulates a time period for such review.[3] Nothing constrains the Chief of Police from denying a license because he or she believes that a person is not of good moral character or because not enough "proof" of good moral character has been submitted. "This presumes the [Chief of Police] will act in good faith and adhere to standards absent from the statute's face. But this is the very presumption that the doctrine forbidding unbridled discretion disallows." *City of Lakewood*, 486 U.S. at 770, 108 S.Ct. 2138. Section 167.02 provides the Chief of Police with unbridled discretion; it is unconstitutional.

In light of the unconstitutionality of § 167.02, § 167.01 is also facially invalid. Section 167.01(a) reads:

No person shall sell or offer for sale, barter or exchange or go from door to door soliciting the purchase or gift of any goods or services in any place in, upon, along or through the streets, avenues, alleys or other public places within the Municipality without first having obtained a license that is in full force and effect and issued pursuant to the provisions of this chapter.

The licensing system must be considered in its entirety. Without § 167.02 (and even with it), *no* mechanism or standard is in place for persons or groups applying for a license, and thus *total* discretion is left in the hands of the Chief of Police. Such overbroad discretion in a licensing scheme violates the United States Constitution.

Next, Plaintiff maintains that the "exception clause" of § 167.03 is facially unconstitutional. Plaintiff also challenges the hour of 5:00 p.m. as being facially unconstitutional because the early curfew serves no significant government purpose and because it leaves Plaintiff, and similarly situated groups, with no meaningful alternative. Section 167.03 reads:

No person, except a duly authorized representative of a recognized educational, civic, religious or charitable organization, shall sell or offer for sale, barter or exchange, or shall solicit from door to door, without appointment, the purchase or gift of any goods, wares, merchandise or other articles of value, money or services within the Municipality during the period from 5:00 p.m. to 9:00 a.m. of the succeeding day or at any time on Sunday.

The exception clause of § 167.03 is unconstitutional because it leaves unfettered discretion in the hands of officials to decide what is a "recognized" organization. Nothing prohibits local officials from deciding that an organization is not "recognized," either because they have never heard of the organization or because they do not agree with the tenets of the group. This section leaves too much discretion in the hands of officials to decide on a whim what is a "recognized" organization, as well as the curfew for recognized, and even unrecognized, organizations. To illustrate: Defendant admitted in its answer that although there was a 5:00 p.m. curfew on Plaintiff's canvassing, it would extend the curfew to 7:30 p.m. for Plaintiff; a seeming arbitrary time mentioned nowhere in the statute. This is unbridled discretion in action.

3. Of course, sections 167.02, 167.03, and 167.05, with their use of the unclear and undefined phrases "good moral character" and "recognized" organization, are also unconstitutionally vague. *See Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976).

Plaintiff argues that the 5:00 p.m. curfew in § 167.03 is also facially unconstitutional. Although there is a significant body of law to support this statement[4], the Court does not need to resolve this issue because the unlawful exception clause cannot be severed without fundamentally disrupting the intention of the section. "Severability of a local ordinance or state law is a question of state law...." *City of Lakewood,* 486 U.S. at 772, 108 S.Ct. 2138. The ordinances contain a general severability section: C.O. § 101.09. However, as the Supreme Court of Ohio explained, "in order to sever a portion of a statute, we must first find that such severance will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State ex rel. Maurer v. Sheward,* 71 Ohio St.3d 513, 644 N.E.2d 369, 377 (1994), *cited with approval in Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 202 (6th Cir.1997).

The list of persons excepted from selling, bartering, exchanging, soliciting, purchasing, or donating articles of value or services after 5:00 p.m. and on Sundays is substantial. If the Court were to sever the exception clause, the section would read that *no person* could do any of these activities after 5:00 p.m. or on Sundays—not civic groups, religious groups, or even the Girl Scouts of America. Such a revision would fundamentally and radically change the meaning of the statute; as well as leave the remainder in a constitutionally dubious state. As such, § 167.03 is struck down in its entirety.

Lastly, Plaintiff argues that § 167.05 is facially unconstitutional because what constitutes a "recognized" organization is vague and it gives unbridled discretion to local officials to determine which groups are "recognized." Section 167.05 reads, in part: "The following persons are hereby declared exempt from paying the [required] fees ... but must obtain a no-fee license, as provided for in such sections: ... a duly authorized solici-

tor soliciting the purchase of goods, wares, merchandise or gifts for or on behalf of any recognized educational, civic, religious or charitable organization...." Persons conducting exempt activities are required to "first register with the Police Department and obtain a no-fee license prior to engaging in the random sales or solicitations and shall state the name of the organization for whom they are conducting such activities and the duration of such activities...." C.O. § 167.05.

Again, nothing in the law describes what constitutes a "recognized" organization. Nothing prohibits the Police Department from deciding that an organization is, or is not, "recognized." Section 167.05 is invalid as it relates to the unconstitutional licensing system in §§ 167.01 and 167.02. Specifically, the reference to § 167.01 is struck from § 167.05. Further, the word "recognized" is struck from § 167.05. Section 167.05 remains in effect as it relates to § 167.04; a section not before the Court at this time.

### III. Plaintiff's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party bears the initial burden of showing the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once a properly supported motion is made, the burden shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

4. *See City of Watseka v. Illinois Pub. Action Council,* 796 F.2d 1547 (7th Cir.1986), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987); *New Jersey Citizen Action v. Edison Township,* 797 F.2d 1250 (3d Cir.1986); *Wisconsin Action Coalition v. City of Kenosha,* 767 F.2d 1248 (7th Cir. 1985); *Association of Community Orgs. for Re-* *form Now v. City of Frontenac,* 714 F.2d 813 (8th Cir.1983); *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 324 S.E.2d 713 (W.Va.1984); *but cf. Ohio Citizen Action v. City of Avon Lake,* 986 F.Supp. 454, 462 (N.D.Ohio 1997).

an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In determining whether there exists a genuine issue of material fact, this court must view the evidence in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598; *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether an issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, the Court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict," *id.* at 252, 106 S.Ct. 2505, or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.*

█ Plaintiff moves for partial summary judgment on the issue of liability under 42 U.S.C. § 1983, arguing that Defendant deprived Plaintiff of its constitutional rights by unlawfully applying its ordinance against Plaintiff. This Court agrees with the Magistrate Judge that Defendant illegally applied its ordinances to Plaintiff and thus is liable for any damages proved by Plaintiff.

In its motion, Plaintiff provided the Certification of Alexandra Buchanan, Executive Director for Ohio Citizen Action. Ms. Buchanan certified that Plaintiff has attempted to canvass in the City of Seven Hills since at least July 1993. At that time, Defendant told Plaintiff that it required each canvasser to produce a police background check (apparently as "proof of good moral character" as required by C.O. § 167.02) and that a 5:00 p.m. curfew would apply.

Defendant admits in its Answer that on or about February 20, 1996, Plaintiff wrote a letter to Defendant (Plaintiff's Exhibit C–1), providing its intention to canvass in the City of Seven Hills. In that letter, Plaintiff informed Defendant that it was a "non-profit Ohio corporation, qualified as a social welfare organization under section 501(c)(4) of the IRS code." Defendant also admitted that on March 18, 1996, Defendant's Law Director told Plaintiff that there was a 5:00 p.m. curfew on Plaintiff's canvassing, that the curfew would be extended to 7:30 p.m., but that each of Plaintiff's canvassers would be required to provide a police background check and comply with other application requirements.

By letter dated April 12, 1996 (Plaintiff's Exhibit C–3), Plaintiff informed Defendant that Defendant was violating the First Amendment and requested that Defendant change its position of requiring canvassers to supply background checks and imposing a curfew. Ms. Buchanan certifies that Defendant did not notify them of a change of position. By letter dated June 7, 1996 (Plaintiff's Exhibit C–4), Plaintiff wrote to Defendant, maintaining Ohio Citizen Action's right to canvass until 9:00 p.m., and providing copious legal citations in support of its position.

On March 23, 1998, Plaintiff again wrote a letter to Defendant (Plaintiff's Exhibit C–5), asking if Defendant still imposed its curfew and registration requirements. Having not been informed of any change in position, Plaintiff filed this lawsuit on May 26, 1998. On September 3, 1998, Defendant's Law Director wrote to the Chief of Police (Plaintiff's Exhibit C–6), asking him to refrain from enforcing Chapter 167 "during the pendency of this litigation." Ms. Buchanan certified that Plaintiff did not canvass in the City of Seven Hills until September 1998 because of the registration requirement.

Defendant, although requesting and receiving from the Court a five-day extension of time to respond to Plaintiff's motion, did not file a response. Further, Defendant did not file any objections to the Magistrate Judge's Report and Recommendation. Defendant may not rest upon the mere allegations or denials in its Answer, but is required to set forth specific facts showing there are genuine issues in dispute. *See* FED.R.CIV.P.

582

56(e). Because Defendant did not so respond, and there is ample evidence to show that Defendant deprived Plaintiff of its constitutional rights, summary judgment on the issue of liability under 42 U.S.C. § 1983 shall be entered against Defendant. *See id.* Defendant is liable for damages, if any, proved by Plaintiff. *See generally Walje v. City of Winchester,* 827 F.2d 10 (6th Cir.1987); *City of Watseka v. Illinois Pub. Action Council,* 796 F.2d 1547 (7th Cir.1986), *aff'd,* 479 U.S. 1048, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

### Conclusion

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Perelman (Document # 16) is ADOPTED and the Court FURTHER DETERMINES that §§ 167.01, 167.02, 167.03, and portions of § 167.05, of the Codified Ordinances of the City of Seven Hills, are a facially unconstitutional prior restraint on speech in violation of the First and Fourteenth Amendments to the United States Constitution. Accordingly, Defendant is permanently enjoined from enforcing §§ 167.01, 167.02, and 167.03 in their entirety, and those portions of § 167.05 detailed above. Furthermore, Defendant is liable, pursuant to 42 U.S.C. § 1983, for any damages proved by Plaintiff. The determination of damages is reserved for further proceedings.

IT IS SO ORDERED.